**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KRISTY LAMBERT ) <br> 3034 Stutzmantown Road ) <br> Somerset, PA 15501 ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMMONWEALTH OF PENNSYLVANIA, ) <br> DEPARTMENT OF CORRECTIONS ) <br> 1590 Walters Mill Road ) <br> Somerset, PA 15510 ) <br> ) <br> Defendant. ) | CIVIL ACTION NO. 3:21-cv-211 <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT – CIVIL ACTION**

Plaintiff, Kristy Lambert ("Plaintiff"), by and through her undersigned attorney, for her complaint against the Commonwealth of Pennsylvania, Department of Corrections, ("Defendant"), alleges as follows:

**INTRODUCTION**

1.  Plaintiff initiates this action contending Defendant violated Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Specifically, Plaintiff contends Defendant subjected her to sexual harassment of a severe or pervasive nature, resulting in a hostile and offensive work environment because of sex, and constructively discharging Plaintiff from her employment as a result of her reports of the same, in violation of Title VII.

**PARTIES**

2.  Plaintiff Kristy Lambert is a citizen of the United States and Pennsylvania and currently maintains a residence at 3034 Stutzmantown Road, Somerset, PA 15501.

3. Defendant Commonwealth of Pennsylvania, Department of Corrections is organized and existing under the laws of the Commonwealth of Pennsylvania with a registered office address and principal place of business located at 1590 Walters Mill Road, Somerset, PA 15510.

## JURISDICTION AND VENUE

4. Paragraphs 1 through 3 are hereby incorporated by reference as though the same were fully set forth at length herein.

5. On or about March 23, 2021, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e). Plaintiff's EEOC charge was docketed as EEOC Charge No. 530-2021-02616. Additionally, on or about November 5, 2021, Plaintiff filed a second charge of discrimination with the EEOC, which was dually filed with the PHRC, thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (e)[1]. Plaintiff's EEOC was filed within one hundred and eighty (180) days of the unlawful employment practice.

6. By correspondence dated September 10, 2021, Plaintiff received a Notice of Right to Sue from the EEOC regarding her March 23, 2021 Charge, advising her that she had ninety (90) days to file suit against Defendant.

7. Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

---

[1] Please be advised that Plaintiff has requested the Notice of Rights to Sue regarding her second charge of discrimination related to her allegations of constructive discharge pursuant to Title VII.

8. This action is authorized and initiated pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

10. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Defendant maintains a business location within this judicial district, is currently doing business therein, and the events giving rise to these claims took place within this judicial district.

## FACTUAL ALLEGATIONS

11. Paragraphs 1 through 10 are hereby incorporated by reference as though the same were fully set forth at length herein.

12. By way of background, on or about August 10, 2020, Plaintiff began her employment with Defendant, as a trainee for a Correctional Officer at the State Correctional Institution of Somerset ("SCI-Somerset").

13. Shortly thereafter, Plaintiff was subjected to severe or pervasive sexual harassment and sex discrimination by Defendant's employees.

14. By way of example, Defendant's Correctional Officer, Mark Paquette ("Mr. Paquette"), often made commentary regarding the upper half of Plaintiff's body and appearance, and often stated that Plaintiff should give him a kiss.

15. Each time, Plaintiff unequivocally rejected the unwelcomed remarks.

16. Furthermore, Mr. Paquette grabbed Plaintiff's hair, which was documented on camera and Correctional Officer Gibbs witnessed the act. It should be noted that at the time, Gibbs was acting Lieutenant.

17. On another occasion and by further way of example, Defendant's Correctional Officer, Mr. Smails (First Name Unknown), grabbed and smacked Plaintiff's buttocks.

18. Thereafter, Plaintiff was asked by Mr. Smails if she had plans later that evening.

19. Plaintiff unequivocally rejected Mr. Smails advances, advising him that she was going home to her husband and kids.

20. Subsequent to her shift, Plaintiff reported the aforementioned incident to Defendant's Lieutenant, Mr. Cinko (First Name Unknown). It should be noted that at the time, Mr. Cinko was the Shift Commander.

21. At that time, Plaintiff did not disclose names out of fear of retaliation, despite Mr. Cinko encouraging Plaintiff to do so.

22. Moreover, Plaintiff also discussed the aforementioned incident with Defendant's Lieutenant, Mr. Fisher ("Mr. Fisher").

23. In response, Mr. Fisher advised Plaintiff that she should give the individuals another chance because if she did not, she was "part of the problem." There were three other individuals who witnessed this conversation, including Mr. Gibbs.

24. Nonetheless, Mr. Fisher did not take any steps remediate the situation nor notify anyone else.

25. Accordingly, Plaintiff advised Mr. Smails that his behavior was inappropriate and that she did not feel comfortable with his unwelcomed advances.

26. In response, Mr. Smails apologized, but shortly thereafter Plaintiff was made aware of the fact that Mr. Smails was telling another Lieutenant that she was spreading lies about him.

27. Then, in or around February 2021, Plaintiff again complained about the hostile work environment and sexual harassment to Defendant's Sergeant, Mr. Murray (First Name Unknown).

28. Upon Plaintiff explaining what she was being subjected to, Defendant's Correctional Officer, Mr. Dabbs (First Name Unknown), grabbed Plaintiff's hair bun and stated "well I just touched your hair, what do you think about that?"

29. Mr. Murray did not take any remedial and/or corrective action towards Mr. Dabbs inappropriate conduct.

30. On another occasion, when Defendant was passing out hoagies to its employees, Defendant's Sergeant, Mr. Nesmith (First Name Unknown), offered Plaintiff a hoagie and stated, "if you eat one of those hoagies, next thing you know, you'll be in the closet sucking an inmate's dick."

31. As a result of the aforementioned, Plaintiff made complaints to multiple direct reports and/or members of management throughout her employment with Defendant, not remedial action was taken.

32. Furthermore, as a result, Plaintiff was denied employment advancement and called a snitch.

33. Due to the hostile work environment, pervasive/ongoing sexual harassment, and the retaliation she experienced for her complaints in connection thereto, Plaintiff made a formal internal EEO complaint.

34. However, the EEO investigation was held out of place by the Security Captain and not kept confidential.

35. As a result of Plaintiff's internal EEO Complaint and the lack of confidentiality, the inappropriate conduct towards Plaintiff became exacerbated.

36. Suspiciously, Correctional Officer Union President Kauert ("Mr. Kauert"), who would have represented Plaintiff at the time of questioning, was discharged on false accusations the morning of the investigation held by the Security Captain.

37. Due to the sufficiently severe and pervasive sexual harassment, the increasingly hostile work environment, and the increased retaliation she began experiencing in connection to her complaints for same, in or around March 2021, Plaintiff requested a leave of absence pursuant to the Family and Medical Leave Act ("FMLA").

38. While out on FMLA leave, in or around April 2021, Donald Talley ("Mr. Talley"), Defendant's Regional Field Human Resource Officer contacted Plaintiff regarding her allegations of sexual harassment and being subjected to a hostile work environment.

39. Mr. Talley advised Plaintiff that she should request a transfer for her own "personal reasons," and to not "air [their] dirty laundry."

40. In response, Plaintiff advised that she felt uncomfortable being asked to request a transfer for her own "personal reasons."

41. Plaintiff further stated that she would consider an offer to transfer if done so appropriately, but felt like her claim should be addressed properly and that it was being ignored.

42. In or around May 2021, Plaintiff was advised that the investigation concerning her allegations of sexual harassment and hostile work environment was closed.

43. The investigation found that the Security Captain was found at fault, but he did not receive any disciplinary action.

44. It should also be noted that Plaintiff received a phone call from a female trainee, Angela LNU (last name unknown), who advised Plaintiff that she had been retaliated against by a Sergeant for making a formal statement in Plaintiff's defense.

45. Upon information and belief, Angela was terminated shortly thereafter in retaliation for her statements in support of the sexual harassment and hostile work environment that Plaintiff was subjected to.

46. Upon further information and belief, the individuals that were sexually harassing Plaintiff were not discharged nor reprimanded.

47. As a result of the aforementioned, Plaintiff has experienced a great decline in her mental health due to the fear of returning to work.

48. In light of the foregoing and the fact that no remedial action was taken, on or around May 11, 2021, Plaintiff resigned from her employment due to the fear of returning to such a hostile work environment and the continuation of sexual harassment.

49. Critically, after Plaintiff was constructively discharged, Mr. Kauert received his job back and all the allegations against him were dropped.

50. Upon information and believe, Mr. Kauert was termination just so that he could not be part of the investigation and protect Plaintiff.

51. Throughout the course of her employment with Defendant, Plaintiff made complaints of the unwelcomed and sexually charged behavior she faced on the basis of her sex.

52. Critically, Plaintiff was forced to endure offensive conduct as a condition of her employment with Defendant, which was sufficiently severe or pervasive to alter the terms and conditions of her employment.

53. Defendant's conduct was sufficiently severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive, and which interfered with the ability for Plaintiff to do her job.

54. Plaintiff made good faith complaints to Defendant, to stop the sexually charged behavior. However, Defendant failed to take appropriate remedial action and in fact retaliated against Plaintiff by implicitly sanctioning the inappropriate behavior done to Plaintiff, with complete disregard for her own well-being.

55. In light of the foregoing, it is believed and therefore averred that Plaintiff was subjected to a hostile work environment, and differential treatment on the basis of her sex (female), and/or for her good faith complaints regarding the severe or pervasive sexual harassment she faced throughout her employment with Defendant, in violation of Title VII.

56. Additionally, as a result of the above-referenced conduct and failure to remedy the ongoing sexual harassment and the hostile work environment, Plaintiff was constructively discharged because of her sex, the ongoing sexual harassment, the hostile work environment, and her complaints in connection thereto.

57. As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

**COUNT I**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. § 2000e,** *et seq.*
**SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT/RETALIATION**

58. Paragraphs 1 through 57 are hereby incorporated by reference as though the same were fully set forth at length herein.

59. Defendant employed at least fifteen (15) employees at its various locations at all times relevant hereto.

60. Plaintiff is female and is therefore a member of a protected class under Title VII.

61. Shortly after Plaintiff's hire, Defendant's employees engaged in a persistent pattern of severe or pervasive harassment against Plaintiff by, among other things, propositioning Plaintiff on a regular basis, making offensive and sexually-based comments to Plaintiff, and engaging in unwelcome and aggressive sexual advances towards Plaintiff.

62. Defendant knew or should have known of the harassment Plaintiff experienced, but failed to act to prevent and/or remedy the harassment.

63. The aforementioned sexual harassment has adversely affected Plaintiff's psychological wellbeing and unreasonably interfered with Plaintiff's work performance.

64. Defendant subjected Plaintiff to a hostile work environment because of sex in violation of Title VII.

65. Defendant retaliated against Plaintiff for making good faith reports of sexual harassment by implicitly sanctioning the inappropriate behavior done to Plaintiff, with complete disregard for her own well-being.

66. Additionally, as a result of the above-referenced conduct and failure to remedy the ongoing sexual harassment and the hostile work environment, Plaintiff was constructively discharged because of her sex, the ongoing sexual harassment, the hostile work environment, and her complaints in connection thereto.

67. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has and is suffering significant mental, emotional, psychological, physical, and economic damages, including, but not limited to, loss of income, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay, and compensatory damages in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000.00);

b) Punitive and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

c) Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

d) Pre-judgment interest in an appropriate amount; and

e) Such other and further relief as is just and equitable under the circumstances.

## COUNT II
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000e, *ET SEQ.*
## SEX DISCRIMINATION AND RETALIATION

68. Paragraphs 1 through 68 are hereby incorporated by reference, as though the same were fully set forth at length herein.

69. Plaintiff made good faith reports of sex-based harassment within the meaning of Title VII while employed with Defendant.

70. Additionally, Plaintiff was subjected to discrimination, as described at length above, on the basis of her sex (female).

71. Despite Defendant's knowledge that Plaintiff was subjected to harassment and discrimination on the basis of her sex, Defendant failed to take any corrective action.

72. Therefore, it is believed and averred that Plaintiff was subjected to increased severe and pervasive sexual harassment, and sex discrimination in retaliation for her good faith report of sex-based harassment.

73. Additionally, as a result of the above-referenced conduct, Plaintiff was constructively discharged on the basis of her sex, the hostile work environment, and her complaints in connection thereto.

74. As a result of Defendant's deliberate, unlawful, and malicious actions set forth above, Plaintiff has suffered significant mental, emotional, psychological, physical, and economic damages, including, but not limited to, loss of income, earnings, and earnings potential.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages, front pay and bonuses, and compensatory damages in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

b) Punitive and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton and/or malicious conduct;

c) Plaintiff's cost, disbursements and attorney's fees incurred in prosecuting this action;

d) Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law;

e) Pre-judgment interest in an appropriate amount; and

f)      Such other and further relief as is just and equitable under the circumstances.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

                              Respectfully submitted,

                              **MURPHY LAW GROUP, LLC**

By:     */s/ Benjamin Salvina*_____
        Benjamin Salvina, Esq.
        Eight Penn Center, Suite 2000
        1628 John F. Kennedy Blvd.
        Philadelphia, PA 19103
        TEL: 267-273-1054
        FAX: 215-525-0210
        bsalvina@phillyemploymentlawyer.com
        *Attorney for Plaintiff*

Dated: 12/7/2021

## **DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation